[Civ. No. 12332.   First Dist., Div. One.   July 13, 1943.]

EVELYN PRUITT et al, Respondents, v. EDWARD KRO-
VITZ et al, Defendants; HARRY R. KROVITZ, Appel-
lant.

ED HANSEN, Respondent, v. EDWARD KROVITZ et al.,
Defendants; HARRY R. KROVITZ, Appellant.

F. E. Hoffmann for Appellant.

Wayne R. Millington for Respondents.

KNIGHT, J.—An automobile driven by Harry Krovitz collided with one driven by Ed Hansen, as a result of which the drivers of both cars were injured, and Joseph Pruitt, who was riding with Hansen, suffered a basal skull fracture and other injuries from the effects of which he died two days later. Alleging that the accident was proximately caused by the negligent operation of the Krovitz car, Pruitt's widow brought an action against him to recover damages on account of the death of her husband, and Hansen sued separately to collect damages for the personal injuries he sustained. The actions were consolidated for trial, and a jury returned verdicts in favor of the plaintiff in each action. Krovitz appealed from the judgments entered on said verdicts, and the appeals are presented in one record.

Appellant makes no claim that the evidence is insufficient to establish negligence on his part, but contends that Hansen was guilty of negligence as a matter of law, and that therefore the trial court committed error in denying appellant's motions for nonsuit and a new trial. There is no merit in the contention. The record discloses a typical fact case, the evidence being conflicting on several essential factors, and the question of proximate cause being one for the determination of the jury.

The accident happened in the city of San Mateo on the evening of March 22, 1941, between dusk and dark, at the intersection of Grant and Seventh Streets, which cross each other at right angles. The parties stipulated that it was an "obstructed intersection," within the meaning of the Vehicle Code definition thereof, and that consequently 15 miles an hour was the speed limit across the intersection. Hansen was driving a two-door Ford coach northerly along Grant Street, and appellant was driving a Buick sedan westerly along Seventh Street. Pruitt was riding on the front seat with Hansen, and Mrs. Hansen and Mrs. Pruitt occupied the rear seat. They had just driven from the Hansen home, a few blocks away, to a nearby store to purchase some groceries, and were on their way back to the Hansen home when the accident occurred. Appellant was a resident of Massachusetts; at the time of trial he was in Rhode Island, and his testimony was

produced by way of deposition. On the evening of the accident he was accompanied by a friend named Ernest Fachadio. They had been at the Bay Meadows Race Track and were on their way to the Owl Cafe in San Mateo. The Hansen car entered the intersection first; its lights were on, and it had reached a point beyond the center of the intersection when it was struck on the right side by appellant's car and hurled a considerable distance beyond the point of impact. The weather was clear, the streets were dry, and the evidence introduced in behalf of respondents is amply sufficient to establish that appellant entered and attempted to cross the intersection at a speed of forty or more miles an hour, and that such was the proximate cause of collision.

■■■ In support of his point that Hansen was guilty of negligence as a matter of law appellant contends that Hansen drove into the intersection "blindly"—without looking for approaching traffic. The record shows otherwise. Hansen testified positively that upon reaching the intersection and before attempting to cross it he looked to the right and to the left and saw no approaching vehicles; that after he "got a little way into the intersection" he again looked to the right and saw appellant's car approaching at a high rate of speed—about 40 miles an hour; that it was then about 30 feet east of the intersection; that he, Hansen, accelerated the speed of his car in an effort to get out of the way, but was unable to avoid being struck. ■■■ Nor does the record support appellant's further contention that Hansen was operating his car at an unlawful rate of speed and greater than was prudent with regard to the particular intersection. Hansen was the only witness who testified regarding the speed of his car. In substance he stated that he approached the Seventh Street crossing at a speed of about 20 miles an hour; that as he reached the intersection he slowed down to 15 miles an hour; that he looked to the right and to the left and saw no cars; that when part way across the intersection he looked again and saw appellant's car travelling toward him at about 40 miles an hour; that he attempted to get out of the way of it by accelerating the speed of his car to 20 or 25 miles an hour, and that he was travelling at that speed when appellant's car struck him. On cross-examination counsel for appellant sought to impeach the witness by calling his attention to excerpts of testimony given by Hansen at the trial of some

justice's court action growing out of the collision. However, the explanation given by Hansen of those portions of his previous testimony was evidently satisfactory to the jury, for it resolved whatever conflict there may have been therein in his favor; therefore, since the testimony given by Hansen at the present trial amply supports the jury's implied finding that he was not driving his car at an unlawful speed, the conclusion so reached by the jury is binding on appeal.

In any event the state of the evidence is such that the question of the proximate cause of the collision is one of pure fact for the determination of the jury, and there is an abundance of evidence to support its implied finding that the proximate cause thereof was the unlawful speed and reckless manner appellant was driving his car. In addition to the testimony given by Hansen that immediately preceding the collision appellant was travelling 40 miles an hour, another witness named Patti testified that as appellant crossed the intersection a block easterly from the one where the collision took place he was travelling about 50 miles an hour. Furthermore the location and condition of both cars following the collision fully supports the inference that appellant's car struck the coach while appellant was travelling at a high rate of speed. In this connection appellant himself testified that following the impact his car continued on and came to a stop "over" a fire hydrant on the northwest corner of the intersection; that the hydrant was broken off; that the left side of his car "was all bent in" and three windows were broken; that the "hydrant had knocked the motor at an angle bending the frame of the car," and the "hood flew off." He claimed he was travelling not more than 25 miles an hour, but the evidence above narrated clearly negatives such claim.

Appellant contends that the testimony given by the witness Patti was erroneously admitted in that it was "too remote." As said, however, in *Ackel* v. *American Creamery Co.*, 12 Cal.App.2d 672 [55 P.2d 1195], the law is well established in this state that the admission or rejection of evidence as to the rate of speed a vehicle is travelling before a collision occurs rests in the sound discretion of the trial court. The question rests so largely within its discretion that no fast or positive rule can be laid down governing the matter, for which reason the ruling of the trial court as to the admission or rejection of this sort of evidence will not be disturbed except upon a showing of abuse of discretion. (*Ritchey* v.

*Watson,* 204 Cal. 387 [268 P. 345]; *Traynor* v. *McGilvray,* 54 Cal.App. 31 [200 P. 1056]; *Wagy* v. *Brave,* 133 Cal.App. 413 [24 P.2d 209].) Here no abuse of discretion is shown. The question of the weight that was to be given to the testimony was properly submitted to the determination of the jury.

■ The trial court fully instructed the jury that the negligence of Hansen, if any, proximately contributing to the collision, barred recovery as to him; and with respect to the cause of action based on the death of Pruitt, it was instructed that if it found that Pruitt was riding with Hansen as his passenger or guest the negligence of Hansen if any could not be imputed to Pruitt; that negligence if any on the part of Hansen could not be imputed to Pruitt "in the absence of proof that he exercised control, supervision and direction as to the manner in which the automobile was being operated." Appellant contends that the portion of the instruction above quoted does not correctly state the law; that the test is not whether one exercises such control, supervision and direction, but rather whether he has the right so to do. The general rule governing in such cases as restated in *Marchetti* v. *Southern Pacific Co.,* 204 Cal. 679 [269 P. 529], is as follows: "The negligence of the driver of a machine, however, cannot be imputed to a passenger therein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated (*Bryant* v. *Pacific Electric Ry. Co.,* 174 Cal. 737 [164 P. 385]; *Irwin* v. *Golden State Auto Tour Corp.,* 178 Cal. 10 [171 P. 1059]; *Nichols* v. *Pacific Electric Ry. Co.,* 178 Cal. 630 [174 P. 319])." ■ However, in the present case, whatever deviation there may have been in the statement of the rule could not possibly have operated to appellant's prejudice, for the evidence affirmatively shows, without conflict and beyond any question of doubt, that Pruitt's status in riding with Hansen was that of a guest, and that he neither exercised control over the driving of the Hansen car nor possessed the power or the right to supervise or direct the manner in which it should be operated. ■ In addition to the facts already set forth, the record in this respect shows that Mrs. Hansen and Mrs. Pruitt are sisters; that the Pruitts lived in South San Francisco, and on this particular afternoon were visiting

Mrs. Hansen at the Hansen home; that when Hansen returned home from his work he took his car to drive to the grocery store to make some purchases, and that the Pruitts and Mrs. Hansen accompanied him. The mere fact that the Pruitts intended to and did do some shopping also while accompanying Hansen to the grocery store could in no sense bring the case within the "joint enterprise" doctrine suggested by appellant.

The judgment in each action is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 8, 1943.